## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DEMI R. TRIMBLE**, | ) | |
| c/o Cornerstone Law Firm | ) | |
| 8350 N. St. Clair Ave, #225 | ) | |
| Kansas City, MO 64151 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNIVERSITY OF KANSAS** | ) | Case No. _____ |
| **HOSPITAL AUTHORITY**, | ) | |
| *Chief Executive Officer:* | ) | |
| 3901 Rainbow Blvd. | ) | |
| Kansas City, KS 66160 | ) | |
| | ) | **REQUEST FOR JURY TRIAL** |
| and | ) | |
| | ) | |
| **ARAMARK SERVICES, INC.**, a | ) | |
| Delaware Corporation, | ) | |
| *Registered Agent:* | ) | |
| THE CORPORATION COMPANY, INC | ) | |
| 112 SW 7TH St., Ste. 3C | ) | |
| Topeka, KS 66603 | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT FOR DAMAGES

COMES NOW Plaintiffs Demi Trimble by and through her attorney, and for her cause of action against Defendants University of Kansas Hospital Authority and Aramark Services, Inc., states and alleges as follows:

### Parties and Jurisdiction

1. This is an employment case based upon and arising under the Civil Rights Act of 1964.

2. Plaintiff Demi Trimble ("Trimble") is a female citizen of the United States, residing in Leavenworth, Kansas.

3.  Defendant University of Kansas Hospital Authority (hereinafter "the Hospital") is and was at all relevant times a body politic and corporation created pursuant to Kansas statute and an independent instrumentality of the state of Kansas with the power to sue and be sued in its own name.

4.  The Hospital conducts substantial and continuous business in the State of Kansas.

5.  Plaintiff was an employee of the Hospital within the meaning of the Civil Rights Act of 1964, Title VII, 42 U.S.C. §§ 2000e et seq. ("Title VII").

6.  At all relevant times, the Hospital employed fifteen (15) or more employees.

7.  At all relevant times, the Hospital employed more than five hundred (500) employees.

8.  At all relevant times, the Hospital operated medical provider facilities in the Kansas City metropolitan area in both Kansas and Missouri.

9.  At all relevant times, the Hospital engaged in interstate commerce.

10. Defendant Hospital is an employer within the meaning of Title VII.

11. Defendant Aramark Services, Inc. (hereinafter "Aramark") is a for profit corporation incorporated under the laws of Delaware.

12. Aramark is and was at all relevant times registered to do business and in good standing in the State of Kansas with its principle place of business located at 1101 Market St., Philadelphia, PA 19107.

13. At all relevant times, Aramark employed fifteen (15) or more employees.

14. At all relevant times, Aramark employed more than five hundred (500) employees.

15. At all relevant times, Aramark was a member of a family of companies that provided food, facility, and uniform services for colleges, universities, school districts, hospitals, healthcare facilities, stadiums, arenas, and other public and private businesses in all fifty states.

16. At all relevant times, Aramark was engaged in interstate commerce.

17. Aramark is an employer within the meaning of Title VII.

18. At all relevant times, the Hospital has maintained and operated a place of business at 3901 Rainbow Blvd. Kansas City, KS 66160.

19. At all relevant times, Aramark provided food services for the patients and employees at the Hospital's 3901 Rainbow Blvd. Kansas City, KS 66160 location (hereinafter the "Rainbow Blvd. facility").

20. As part of the food services Aramark provided to the hospital, Aramark employed chefs and other dietary employees to perform various tasks, including the ordering of food, the preparation of menus, and the supervision of the Hospital's dietary staff employees, including Plaintiff.

21. The employees placed by Aramark at the Hospital's Rainbow Blvd. facility had the authority to control the job duties of, and to make employment decisions with regard to, the Hospital's dietary staff employees, including Plaintiff.

22. The Hospital and Aramark (hereinafter collectively "Defendants") employed Plaintiff at the Hospital's Rainbow Blvd. facility.

23. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331 as this case arises under the laws of the United States.

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## Administrative Procedures

25. On or about October 13, 2016, Plaintiff timely filed a charge of discrimination, alleging sexual harassment and retaliation, with the United States Equal Employment Opportunity

Commission ("EEOC") and the Kansas Commission on Human Rights (attached as Exhibit 1 and incorporated herein by reference).

26. On or about June 15, 2017, the EEOC issued Plaintiff a Notice of Right to Sue with regard to her claims against Aramark (attached as Exhibit 2 and incorporated herein by reference).

27. On or about August 28, 2017, the Department of Justice ("DOJ") issued Plaintiff a Notice of Right to Sue with regard to her claims against the Hospital (attached as Exhibit 3 and incorporated herein by reference).

28. The DOJ issued Plaintiff's Notice of Right to Sue with regard to her claims against the Hospital upon a determination that the Hospital is a political subdivision and governmental entity.

29. The Hospital is a political subdivision and governmental authority.

30. The DOJ had the authority to issue Plaintiff's Notice of Right to Sue with regard to her claims against the Hospital.

31. This lawsuit was filed within 90 days of the issuance of the EEOC and DOJ's Notices.

32. The aforesaid Charges of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of the judicial complaint may be and is as broad as the scope of an EEOC investigation which could reasonably be expected to have grown out of the Charges of Discrimination.

33. Plaintiffs have satisfied all private administrative and judicial prerequisites and judicial prerequisites to the institution of this action.

34. This Complaint is filed within the applicable statute of limitations.

## Additional Factual Allegations

35. Plaintiff began working at the Hospital's Rainbow Blvd. facility in approximately May 2016 as a cook.

36. During all times relevant, Plaintiff's supervisors were Mike Moyes ("Moyes") and Lloyd Lowe ("Lowe").

37. Moyes and Lowe were employed by Aramark as chefs and placed at the Hospital's Rainbow Blvd. facility.

38. Throughout Plaintiff's employment with Defendants, Moyes and Lowe had control over Plaintiff's job duties and her employment status.

39. In approximately late May 2016, another cook, Lorenzo Thompson ("Thompson"), began treating plaintiff poorly because of her sex.

40. On one occasion, Plaintiff had whipped cream on her apron from working on desserts and Thompson said, "What are you doing on your breaks? Are your knees sore?"

41. Plaintiff reasonably believed that Thompson's comments were insinuating that the whipped cream was semen and that Plaintiff had engaged in fellatio.

42. At some time after this incident, but before May 30, 2016, Plaintiff told her immediate supervisor, team lead Jenna Jordan ("Jordan"), about Thompson's comments regarding the whipped cream.

43. Over the course of three (3) or four (4) days, Thompson reached for Plaintiff's nametag approximately five (5) times, and pretend to look at it to learn Plaintiff's name, even though he knew her name.

44. When Thompson would reach for Plaintiff's nametag, he would do so with an open hand such that when he grabbed Plaintiff's nametag, he would also momentarily cup Plaintiff's breast.

45. Thompson's conduct made Plaintiff so uncomfortable that she began hiding her nametag when Thompson was around her so that Thompson would not have an excuse to reach for it.

46. During that same time, Thompson wrapped his arms around Plaintiff's waist.

47. When Thompson wrapped his arms around Plaintiff's waist, reasonably believed that he was going to throw her to the floor.

48. On or around May 30, 2016, Plaintiff and Thompson got into a verbal altercation in which Thompson called Plaintiff "crazy white girl" and made other off-handed comments to Plaintiff.

49. Following the verbal altercation with Thompson, Plaintiff asked Jordan, if she could take a five-minute break, which Jordan allowed.

50. During her five-minute break, Plaintiff went to the bathroom to collect herself.

51. While Plaintiff was in the bathroom collecting herself after her verbal altercation with Thompson on May 30, 2016, Jordan went into the bathroom to see why Plaintiff had not yet returned from the break.

52. When Jordan went into the bathroom after Plaintiff to see why Plaintiff had not yet returned from her break, the full five minutes Jordan had approved for Plaintiff to take had not yet expired.

53. When Jordan went into the bathroom to see why Plaintiff had not yet returned from her break, Plaintiff told Jordan that she did not feel comfortable working with Thompson and that she felt she was being sexually harassed.

54. Plaintiff's comments to Jordan that she did not feel comfortable working with Thompson and that she felt she was being sexually harassed constituted a good faith report of sexual harassment.

55. Jordan responded to Plaintiff's good faith report of sexual harassment by telling Plaintiff that Jordan had been sexually harassed in the past and Plaintiff would be fired if she did not go back out onto the line.

56. On or about June 1, 2016, Plaintiff spoke with Alix Orrick ("Orrick"), human resources representative for the Hospital.

57. During their conversation on June 1, 2016, Plaintiff told Orrick about the harassment from Thompson and Jordan's reaction when Plaintiff made a good faith report of sexual harassment to her.

58. Plaintiff's description to Orrick of the harassment from Thompson constituted a second good faith report of sexual harassment.

59. Plaintiff's description to Orrick of Jordan's reaction when Plaintiff made a good faith report of sexual harassment to her constituted a good faith report of retaliation.

60. Orrick informed Plaintiff that the issue would be addressed within two weeks.

61. After her meeting with Orrick on June 1, 2016, Plaintiff then told Moyes about the harassment from Thompson and Jordan's reaction.

62. Moyes told Plaintiff that if she talked to anybody about the ongoing investigation, Plaintiff would be fired.

63. Both Moyes and Orrik suggested separating Plaintiff from Thompson, but this was never done.

64. Approximately ten (10) days after Plaintiff made her good faith report of Thompson's sexual harassment of her to Orrick and Moyes, Thompson walked behind Plaintiff in an area in which he had no reason to go, and as he walked behind her, he slowly slid his fingertip along the top of her pant line.

65. Plaintiff did not report this incident right away because she had been told not to talk to anyone about the investigation.

66. On or about June 15, more than two weeks after Plaintiff made her good faith report of sexual harassment to Orrick, Plaintiff went back to her to find out what was to be done.

67. On or about June 15, 2016, Plaintiff told Orrick that she no longer felt safe around Thompson.

68. Orrick told Plaintiff that the Hospital had not been able to obtain statements from any witnesses.

69. Plaintiff tried to put her mother on speakerphone to ask Orrick any questions that Plaintiff had not thought of, and Orrick became very rude.

70. After Orrick became very rude with Plaintiff and Plaintiff's mother, Plaintiff began to cry.

71. When Plaintiff began to cry during her meeting with Orrick after Plaintiff tried to put her mother on speakerphone, Orrick responded, "You weren't this upset the last time you were in here."

72. When Plaintiff went back to the kitchen to perform her job duties after her meeting with Orrick on June 15, 2016, Lowe sat her down and reprimanded her for the way she was preparing salads.

73. Between the beginning of her employment and June 30, 2016, Plaintiff prepared salads the same way as she had been trained.

74. Other employees prepared salads the same way as Plaintiff without reprimand.

75. Plaintiff was not reprimanded for the way she prepared salads prior to her good faith reports of sexual harassment against Thompson or of retaliation against Jordan.

76. On Plaintiff's next work day, June 17, 2016, Lowe told Plaintiff that she would be working with Thompson again.

77. Later that day, Lowe told Plaintiff that he had switched Plaintiff's schedule with another employee such that Plaintiff would be working with Thompson again the next day.

78. Plaintiff finished her shift with Thompson on June 17, 2016.

79. Because Plaintiff did not feel safe working with Thompson again, and because it was clear that Defendants were not taking steps to separate Plaintiff from Thompson, Plaintiff left a note for Moyes and Lowe telling them that June 17 was her last day, and she resigned her position with the Hospital.

<u>**COUNT I**</u>
**Violation under 42 U.S.C. §§ 2000e *et seq.***
**Sex Discrimination – Hostile Work Environment**
**(Brought Against All Defendants)**

80. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

81. Plaintiff is female and thereby a member of a protected class.

82. Plaintiff was subjected to severe, pervasive, and unwelcome sex discrimination in the form of lewd comments and physical contact.

83. The sex discrimination to which Plaintiff was subjected affected a term, condition, or privilege of Plaintiff's employment because the conduct was continuous, outrageous, humiliating, and unreasonably interfered with Plaintiff's ability to perform the functions of her employment.

84. Plaintiff's sex was a motivating or determining factor in the severe and pervasive sex discrimination to which Plaintiff was subjected.

85. Defendants were aware of the sex discrimination to which Plaintiff was subjected.

86. Defendants failed to take prompt and appropriate corrective action to end the sex discrimination to which Plaintiff was subjected.

87. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

88. Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including sex discrimination.

89. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

90. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her sex, in violation of Title VII.

91. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived income as well as other monetary and non-monetary benefits.

92. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff have suffered humiliation, mental anguish, and pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

93. By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

94. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the

rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employees from like conduct in the future.

95. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover her reasonable attorney's fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back-pay and the value of lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorney's fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Sex Discrimination – Disparate Treatment (Constructive Discharge)
### (Brought Against All Defendants)

96. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

97. Plaintiff is female and thereby a member of a protected class.

98. In choosing to not take prompt and appropriate corrective action to end the sex discrimination to which Plaintiff was subjected, Defendants subjected Plaintiff to treatment that made Plaintiff's work intolerable.

99. Defendants' conduct was directed toward forcing Plaintiff to quit.

100.    Plaintiff's decision to terminate her employment was a reasonably foreseeable consequence of Defendants' conduct.

101.    The conduct to which Defendants subjected Plaintiff was such that a reasonable person in her situation would find it intolerable and find that resignation was the only reasonable alternative.

102.    Plaintiff's sex was a motivating or determining factor in Defendants' decision to not take prompt and appropriate corrective action to end the sex discrimination to which Plaintiff was subjected.

103.    At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

104.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including sex discrimination.

105.    Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

106.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her sex, in violation of Title VII.

107.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived income as well as other monetary and non-monetary benefits.

108.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff have suffered humiliation, mental anguish, and pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

109.    By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

110.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employees from like conduct in the future.

111.    Pursuant to the provisions of Title VII, Plaintiff is entitled to recover her reasonable attorney's fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back-pay and the value of lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorney's fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Retaliation (Constructive Discharge)
### (Brought Against All Defendants)

112.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

113.    Plaintiff made two good faith reports of sexual harassment and a good faith report of retaliation and thereby engaged in protected activities.

114.   In choosing to not take prompt and appropriate corrective action to end the sex discrimination to which Plaintiff was subjected, Defendants subjected Plaintiff to treatment that made Plaintiff's work intolerable.

115.   Defendants' conduct was directed toward forcing Plaintiff to quit.

116.   Plaintiff's decision to terminate her employment was a reasonably foreseeable consequence of Defendants' conduct.

117.   The conduct to which Defendants subjected Plaintiff was such that a reasonable person in her situation would find it intolerable and find that resignation was the only reasonable alternative.

118.   Plaintiff's participation in protected activities was a motivating or determining factor in Defendants' decision to not take prompt and appropriate corrective action to end the sex discrimination to which Plaintiff was subjected.

119.   At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

120.   Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including sex discrimination.

121.   Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

122.   As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her sex, in violation of Title VII.

123.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has

been deprived income as well as other monetary and non-monetary benefits.

124.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff

have suffered humiliation, mental anguish, and pain, and a loss of self-esteem in the form of

emotional distress and related compensatory damages.

125.    By failing to take prompt and effective remedial action and instead of re-employing

Plaintiff, Defendants, in effect, condoned, ratified, and/or authorized discrimination against

Plaintiff.

126.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and

showed complete indifference to or conscious disregard for the rights of others, including the

rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to

punish Defendants or to deter them and other employees from like conduct in the future.

127.    Pursuant to the provisions of Title VII, Plaintiff is entitled to recover her reasonable

attorney's fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against

Defendants for economic damages, including but not limited to back-pay and the value of lost

benefits; for compensatory damages, including but not limited to emotional distress; for

equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages;

for reasonable attorney's fees and costs incurred herein; for pre- and post-judgment interest as

allowed by law; and for such other and further legal and equitable relief as the Court deems just

and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of

wrongful conduct alleged in this Complaint.

Respectfully Submitted,


CORNERSTONE LAW FIRM

By:  /s/ Joshua P. Wunderlich
Joshua P. Wunderlich          D Kan 78506
j.wunderlich@cornerstonefirm.com
8350 N. St. Clair Ave., Ste. 225
Kansas City, Missouri 64151
Telephone          (816) 581-4040
Facsimile          (816) 741-8889

ATTORNEY FOR PLAINTIFF